UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CHARLES E. GUNTER, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:05CV01524 ERW |
| ) | |
| WILLIAM J. MORRISON et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

This matter comes before the Court upon Defendants' Motion for Summary Judgment [doc. # 24].

**I.  BACKGROUND FACTS**

Plaintiff Charles E. Gunter, Jr is an at-will employee of the Defendant City of St. James ("the City") and serves as foreman of the electrical department within the St. James Utility Department. In May 2000, Plaintiff and his wife filed a lawsuit in state court seeking an order of mandamus to compel the City to approve a re-subdivision plat of their residential lot. In addition, they sought damages against the City alleging that the City's refusal to approve the plat was a taking of his private property without compensation in violation of Article I, Section 26 of the Missouri Constitution and of the Fifth Amendment of the United States Constitution. In April 2004, the trial court granted judgment in Gunter's favor. In April 2006, the Missouri Court of Appeals, Southern District, affirmed in part the trial court's Judgment.

In November 2003, the position of Acting Superintendent became available within the

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

City's Public Works Department. Defendant Mayor William J. Morrison ("Mayor Morrison") appointed Mr. Mike Cornick, ("Mr. Cornick") an employee in the City's Public Works Department, as Acting Superintendent. The Board of Public Works ("the Utility Board") then approved the appointment. Mayor Morrison asserts that he thought Mr. Cornick would be the best candidate for the position because the former Superintendent, Mr. Jim Holt, would often bring Mr. Cornick with him to meetings with Mayor Morrison to discuss issues within the utilities department. Plaintiff denies that this was Mayor Morrison's true motivation for appointing Mr. Cornick.

In March 2004, the Utility Board[1] interviewed four candidates for the position of Assistant Superintendent: Plaintiff, Micheal Licklider, Mr. Cornick and another unknown person. The Utility Board met in closed session to discuss the candidates' qualifications. Plaintiff was not offered the position. The Utility Board instead appointed Mr. Cornick. Although the parties agree that Mayor Morrision did not vote to approve the appointment of Mr. Cornick, there is a dispute as to whether he participated in the decision making process.

The Utility Board articulated their reasons for selecting Mr. Cornick over Plaintiff. Both Mr. James and Mr. Gorman testified in their depositions that Mr. Cornick was better qualified for the position and held more certifications than Plaintiff. According to Mr. Mueller, Mr. Cornick was more familiar with the whole city structure, more capable and possessed a better overall knowledge with respect to the utilities department. Finally, Mr. Wilson noted that Mr. Cornick got along with people better than Plaintiff. The members of the Utility Board deny that the failure

---

[1] In March 2004, Defendants Daryl James, Louis Gorman, Adolph Mueller and Ira Wilson were the members of the Utility Board for the City of St. James.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

to promote Plaintiff had anything to do with his former lawsuit against the City.

In February 2006, Plaintiff commenced this action, alleging that Defendants' conduct, in failing to appoint him, deprived Plaintiff of his constitutional rights. First, Plaintiff claims that the lawsuit he filed against the City angered Mayor Morrison and, in retaliation, Defendants refused to promote him to the positions of Acting Superintendent and Assistant Superintendent in violation of his First Amendment right to access the courts. Second, Plaintiff alleges that Defendants' actions violated his right to procedural and substantive due process guaranteed by Article IV(Privileges and Immunities Clause),[2] the Fifth Amendment, and the Fourteenth Amendment.[3] Finally, Plaintiff contends that a civil conspiracy existed between the Defendants to retaliate against him and to refuse to promote him to the above mentioned positions.

## II. SUMMARY JUDGMENT STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment only if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The United States Supreme Court has noted that "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the federal rules as a whole,which are

---

[2] The parties have not briefed the issue of whether the Defendants' alleged actions violated Article IV of the United States Constitution. The Court declines to raise the issue on its own motion.

[3] An at-will employee has no property interest in his employment for purposes of the Fourteenth Amendment. *Rogerson v. Hot Springs Advertising and Promotion Com'n*, 237 F.3d 929, 930 (8th Cir. 2001). Plaintiff concedes that he has no property or liberty interest in the promotion at issue and therefore has no constitutionally protected entitlement to that position. Mem. in Opp. at 13. Therefore, the Court will not discuss this issue.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

designed to 'secure the just, speedy and inexpensive determination of every action.'" *Id.* at 327 (quoting Fed. R. Civ. P. 1). "By its terms, [Rule 56(c)(1)] provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Material facts are those "that might affect the outcome of the suit under the governing law," and a genuine material fact is one such that "a reasonable jury could return a verdict for the nonmoving party." *Id*.

If the non-moving party has failed to "make a showing sufficient to establish the existence of an element essential to that party's case, . . . there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23. "Thus, where the moving party can point to the absence of any evidence satisfying a necessary element of a claim, such as damages, and the non-moving party fails to produce any such evidence, summary judgment is properly entered." *Meterlogic, Inc. v. KLT, Inc.*, 368 F.3d 1017, 1018 (8th Cir. 2004).

The initial burden of proof in a motion for summary judgment is placed on the moving party to establish the non-existence of any genuine issue of fact that is material to a judgment in its favor. *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). Once this burden is discharged, if the record does in fact bear out that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on that issue. *Anderson*, 477 U.S. at 249. When the burden shifts, the non-moving party may not rest on the allegations in its

4

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); *Stone Motor Co. v. Gen. Motors Corp.*, 293 F.3d 456, 465 (8th Cir. 2002). To meet its burden, the non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In fact, the non-moving party must show there is sufficient evidence favoring the non-moving party which would enable a jury to return a verdict for it. *Anderson*, 477 U.S. at 249; *Celotex*, 477 U.S. at 324. "If the non-moving party fails to produce such evidence, summary judgment is proper." *Olson v. Pennzoil Co.*, 943 F.2d 881, 883 (8th Cir. 1991).

## III. DISCUSSION

A. First Amendment Retaliation Claim

Plaintiff alleges that Defendants failed to promote him to the positions of Acting Superintendent and Assistant Superintendent in retaliation for the lawsuit he filed in state court against the City in violation of his right to free speech. A First Amendment retaliation claim under 42 U.S.C. § 1983 requires Plaintiff to show that the City acted to inflict injury through acts of the county's officers or through a pattern or custom and that a constitutional injury occurred. *Jones v. Fitzgerald*, 285 F.3d 705, 714 (8th Cir. 1999).

To show a constitutional injury the plaintiff must demonstrate that (1) he engaged in protected activity, (2) he suffered an adverse employment action[4], and (3) that there was a causal

---

[4] "Employment actions commonly considered serious enough to inflict constitutional injury include refusals to hire, refusals to promote, reprimands, demotions and discharges." *Jones*, 285 F.3d at 714.

5

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

connection between the two.[5] *Id*. Even if the plaintiff demonstrates these factors, the defendant can still prevail on a motion for summary judgment if it can show, by a preponderance of the evidence, that it would have taken the same adverse employment action "even in the absence of the protected conduct." *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 287 (1977).

Whether a public employee's expressions are constitutionally protected is a question of law which involves a two-step inquiry. First, the court must conclude that the employee's speech can be characterized as a matter of public concern. Second, if the speech falls within this category, the court must balance "the interest of employee as a citizen, in commenting on matters of public concern and the interests of the state, as an employer, in promoting the efficiency of the public service it performs through it employees." *Pickering v. Board of Educ.*, 391 U.S. 563, 568 (1968); *Cox*, 790 F.2d at 672 (quoting *Connick*, 461 U.S. at 142).

1. Matter of public concern

As outlined above, a government employee must show that his speech was on a matter of public concern in order for that speech to be protected under the First Amendment. In making this determination, we examine the "content, form and context" of the speech. *Connick*, 461 U.S. at 147-148. Generally, speech on "any matter of political, social, or other concern to the community is protected by the First Amendment." *Id*.

The 8th Circuit has further interpreted the "public concern" requirement in *Connick*. The focus is on the employee's motivation in speaking and "the role the employee has assumed in

---

[5] The causal connection must be sufficient to warrant the inference that the "protected speech was a substantial or motivating factor in the adverse employment decision." *Cox v. Dardanelle Public School District*, 790 F.2d 668, 672 (8th Cir. 1986).

6

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

advancing the particular expressions: that of a concerned public citizen, informing the public that the state institution is not properly discharging its duties, or engaged in some way in misfeasance, malfeasance or nonfeasance or merely as an employee, concerned only with internal policies or practices which are of relevance only to the employees of that institution." *Kincade v. City of Blue Springs*, 64 F.3d 389,396 (8th Cir. 1995) (citing *Cox*, 790 F.2d at 672); *see also Bausworth v. Hazelwood School District*, 986 F.2d 1197, 1198 (8th Cir. 1993).

The specific nature of Plaintiff's action–seeking formal approval of a re-subdivision plat for a residential lot [6]–does not constitute a matter of public concern for First Amendment purposes. Nothing in the record indicates that Plaintiff's purpose in filing the lawsuit was to contribute to any public discourse, nor did he seek to make a public issue of the City's actions. *Connick*, 461 U.S. at 148; *Bausworth*, 986 F.2d at 1999. *See also Linhart v. Glatfelter*, 771 F.2d 1004, 1010 (7th Cir. 1985) (*Connick* "requires us to look at the point of the speech in question: was it the employee's point to bring wrongdoing to light? Or to raise other issues of public concern, because they are of public concern? Or was the point to further some purely private interest?").

To the contrary, Plaintiff was motivated solely by self-interest. Plaintiff, intending to build a home and subdivide his land, submitted various re-subdivision plats to the City for approval. When his request was denied, Plaintiff filed a lawsuit seeking to compel the City to reverse its decision. Plaintiff was driven by a purely personal matter and his 2000 lawsuit cannot be characterized as relating to a matter of concern to the community. *Connick*, 461 U.S. at 146; *Hoffman v. Mayor, Councilmen and Citizens of City of Liberty*, 905 F.2d 229 (8th Cir. 1990)

---

[6]*See Gunter v. City of St. James*, 189 S.W.3d 667, 670 (Mo. App. S.D. 2006)

7

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

(holding that purely personal concerns that Plaintiff raised were not transmuted into matters of public interest merely because Plaintiff raised them by filing a formal grievance).

Plaintiff asserts that his 2000 lawsuit addresses a matter of public concern because the problems he encountered could have happened to any person attempting to develop land in the City. Mem in Opp. at 16. This argument is unpersuasive. That others could conceivably face circumstances similar to those that gave rise to Plaintiff's lawsuit is not sufficient to fall under the rubric of a matter of public concern.[7] *See Terrell v. University of Texas System Police*, 792 F.2d 1360, 1362 (5th Cir. 1986) ("the mere fact that the topic of employee's speech was one in which the public might or would have had a great interest is of little moment."). If the Court were to adopt Plaintiff's argument, then "every criticism directed at a public official–would plant the seed of a constitutional case." *Connick*, 461 U.S. at 149.

Plaintiff further contends that his 2000 lawsuit is constitutionally protected speech because "[i]t is of public concern that our government officials conduct business in accordance with our state and federal constitutions." Mem. in Opp. at 16. The Court rejects Plaintiff's assertion because nothing in the record indicates that Plaintiff was concerned with the City's practice of violating its citizens' constitutional rights when he filed the lawsuit.[8] Rather, Plaintiff was concerned with obtaining a permit from the City to subdivide his land. *See Alinovi v. Worcester School Committee*, 777 F.2d 776, 787 (1st Cir. 1985) (letters of reprimand issued to teacher by

---

[7] Plaintiff does not point to evidence in the record showing that facing difficulty in obtaining approval for land development has been the subject of concern for residents of the City. *See City of San Diego v. Roe*, 543 U.S. 77, 83-84 (2004).

[8] Moreover, Plaintiff does not point to evidence in the record showing that residents have expressed concern with the City's failure to adhere to constitutional mandates.

8

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

school administration did not implicate an issue of "public concern" under *Connick*, despite tangential connection to an incident implicating the teacher's Fourth Amendment rights; "when [the teacher] posted the letters . . . she was not concerned with any possible violation of her Fourth Amendment rights, but rather, with [a] purely personal issue concerning the lack of action on the part of the administration regarding her disciplinary problem.").

Thus, the Court concludes that Plaintiff's 2000 lawsuit against the City did not touch on matters of public concern and is therefore not protected speech under the First Amendment.

In the absence of protected conduct under the First Amendment, the *Pickering* balancing test does not apply and, thus, Defendants' decision not to promote Plaintiff does not have to be justified to the Court. "When a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." *Connick*, 461 U.S. at 146; *See also Hoffman v. Mayor, Councilman and Citizens of the City of Liberty*, 905 F.2d 229, 231 n.2 (8th Cir. 1990) (noting that the motives ascribed to the City in the circumstances surrounding its rehiring of the plaintiff are not germane if plaintiff's conduct is not first determined to be an expression protected by the First Amendment).

Accordingly, summary judgment in Defendants' favor is appropriate.

B. Qualified Immunity

Defendants argue that Plaintiff's claim against Defendants is barred by the doctrine of qualified immunity. Qualified immunity protects government officials from the costs of trial and the burden of broad discovery unless their discretionary acts violate clearly established statutory

9

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

or constitutional rights. *Wilson v. Northcutt*, 441 F.3d 586, 590 (8th Cir. 2006). A qualified immunity analysis requires a two-step inquiry. The first question, taken in the light most favorable to the party asserting the injury, is whether the facts alleged show that the government official's conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If the facts show that the officer violated a constitutional right, then the second question is whether the right was clearly established at the time of the alleged violation. *Id.* at 202. In order to be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that he is violating the right. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Anderson v. Creighton,* 483 U.S. 635, 640 (1987). If both inquiries are answered in the affirmative, the officer is not entitled to qualified immunity.

Here, the Court has determined that Plaintiff's 2000 lawsuit was not a matter of public concern and therefore not constitutionally protected speech. Thus, Defendants are entitled to qualified immunity because their alleged actions did not violate a constitutional right. Having resolved this inquiry in favor of Defendants, the Court is not required to address the second element.

C. Civil Conspiracy

Plaintiff alleges that Mayor Morrison and the members of the Utility Board entered into a civil conspiracy to violate Plaintiff's civil rights. Namely, Mayor Morrison convinced the members of the Utility Board to deny Plaintiff a promotion to Assistant Superintendent. To establish a civil conspiracy, Plaintiff must show five elements. Conspiracy involves: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action to be taken; (4) the commission of one or more unlawful overt acts; and (5)

10

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

damages as the proximate result of the conspiracy. *Robinson v. White County*, 452 F.3d 706,712 (8th Cir. 2006) (citing *in re Temporomandibular Joint Implants Prods. Liab. Litig.*, 113 F.3d 1484, 1498 (8th Cir. 1997)). Further, Plaintiff is required to prove a deprivation of a constitutional right or privilege in order to prevail on a §1983 civil conspiracy claim." *Askew v. Millerd*, 191 F.3d 953, 957 (8th Cir. 1999).

Plaintiff's allegations cannot sustain a conspiracy claim. Plaintiff has failed to identify any protected right or privilege which has been denied. In fact, Plaintiff admits that he has no property or liberty interest in the promotion at issue and therefore that he has no constitutionally protected entitlement to that position. Mem. in Opp. at 13.

Therefore, the Court grants summary judgment in favor of all Defendants on the civil conspiracy claim.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment [doc.#24] is **GRANTED**.

Dated this <u>13th</u> day of September, 2006.

_____
E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE

PDF created with FinePrint pdfFactory trial version www.pdffactory.com